Timothy Dale O'KEEFE,
Plaintiff–Appellee,

v.

Ronald VAN BOENING, WSP Associate
Superintendent; James Spalding, Director DOP; Carol A. Murphy, Assistant
Attorney General of Washington, Defendants–Appellants.

No. 94–35845.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 16, 1995.

Decided April 30, 1996.

Douglas W. Carr, Assistant Attorney General, Olympia, Washington, for defendants-appellants.

Erika Balasz, Lukins & Annis, Spokane, Washington, for plaintiff-appellee.

Before: BOOCHEVER, FERNANDEZ, and KLEINFELD, Circuit Judges.

BOOCHEVER, Circuit Judge:

A state prisoner sued various prison officials pursuant to 42 U.S.C. § 1983 (1988), alleging that the prison's mail policy violated his First Amendment right to seek redress for grievances. Under the prison's mail poli-

cy, "legal mail," although broadly defined, does not include grievances sent by prisoners to some state agencies or officials. Consequently, for the purpose of inspecting for contraband, evidence of criminal activity, or threats to prison security, prison mailroom employees can open and read these grievances and any responses, outside the presence of the prisoners.

This case raises questions regarding whether the prison mail policy infringes on a prisoner's First Amendment right to send grievance mail, and if so, whether legitimate penological interests justify the infringement. Even assuming that the prison's mail policy infringes on the prisoner's First Amendment right, we find that legitimate penological interests justify the infringement. Therefore, we hold that the district court should not have granted summary judgment in favor of the prisoner and instead should have granted summary judgment in favor of the prison officials.

### FACTS

Prisoner Timothy Dale O'Keefe ("O'Keefe") sued Ronald Van Boening, Washington State Penitentiary ("WSP") Associate Superintendent, James Spalding, Division of Prisons Director, and Carol Murphy, Assistant Attorney General of Washington (collectively "the State Officials") pursuant to 42 U.S.C. § 1983. O'Keefe alleged that the State Officials violated his constitutional rights by enforcing Department of Corrections Policy 590.500 ("the DOC Mail Policy"), which precludes O'Keefe from sending as "legal mail" letters to various state officials and agencies.

Under the DOC Mail Policy, legal mail is broadly defined and includes the following:
Correspondence to or from courts and court staff, attorneys, established groups of attorneys involved in the representation of offenders in judicial proceedings (i.e., American Civil Liberties Union, legal services groups, etc.), the President or Vice President of the United States, members of the United States Congress, embassies, and consulates, the United States Department of Justice, state attorneys general, governors, members of the state legislature, and law enforcement officers in their official capacity.

Members of the prison staff inspect the contents of all incoming and outgoing legal mail for contraband but do not read such mail. The prison staff is only allowed to inspect legal mail in the presence of the prisoner sending or receiving that mail.

All mail not fitting within the definition of legal mail is regular mail. Members of the prison mailroom staff may open and read incoming and outgoing regular mail, before distributing or sending it, to prevent criminal activity and to maintain prison security.[1] The prisoner sending or receiving the regular mail need not be present when the inspection is conducted. If a member of the prison mailroom discovers contraband or plans for escape or other criminal activity, then he or she will refuse to send or deliver the item and will forward the relevant information to the prison's intelligence and investigation office, but not to any other person.

The WSP currently employs seven full-time employees in the mailroom. On average, these employees spend about twenty-two percent of their time processing legal mail, even though legal mail constitutes only about five percent of all mail. If the mail sent by prisoners to all state agencies and officials were treated as legal mail, the prison would likely have to hire an eighth mailroom employee because of the individualized attention devoted to processing legal mail.

---

1. DOC Policy 450.100 sets forth the circumstances which require mailroom staff to withhold delivery of incoming and outgoing regular mail. Those circumstances include, among others, (1) the mail contains threats of physical harm; (2) the mail threatens blackmail; (3) the mail contains contraband; (4) the mail describes the procedures for the construction or use of weapons; (5) the mail contains plans to escape; (6) the mail contains plans for activities in violation of facility rule or for criminal activity; (7) the mail is in code; (8) the mail contains obscene or sexually explicit material; and (9) other reasons.

Because O'Keefe only challenges the prison's failure to treat certain grievances as legal mail under DOC Policy 590.500, we express no opinion concerning the validity of the criteria set forth in DOC Policy 450.100.

In October 1993, O'Keefe attempted to send several grievances as legal mail to various Washington state agencies and officials. The prison's mailroom staff returned this mail unopened to O'Keefe, because the mail did not meet the definition of legal mail. O'Keefe refused to accept some of the returned mail. Rather than retain or destroy the mail that O'Keefe refused to accept, prison officials sent it out as regular mail.

In response to the prison's handling of his mail, O'Keefe filed various grievances within the prison system. After exhausting these administrative remedies, O'Keefe brought suit against the State Officials. The State Officials filed a motion for summary judgment, to which O'Keefe filed a response. After considering the arguments made by both parties, the district court *sua sponte* granted summary judgment in favor of O'Keefe. The district court ruled that the DOC Mail Policy impermissibly infringes on O'Keefe's First Amendment right to send grievance petitions to, and receive responses from, state agencies and officials.

The State Officials filed a motion for reconsideration. As part of that motion, the State Officials submitted a supplemental memorandum addressing the legitimate penological interests advanced by the DOC Mail Policy. After considering the supplemental memorandum, the district court denied the motion for reconsideration. *O'Keefe v. Murphy,* 860 F.Supp. 748 (E.D.Wash. 1994). This appeal followed.

## DISCUSSION

### 1. *Implied Motion for Summary Judgment*

The State Officials argue that the district court erred when it *sua sponte* granted summary judgment in favor of O'Keefe. "*Sua sponte* entry of summary judgment is proper if 'there is no genuine dispute respecting a material fact essential to the proof of movant's case....'" *Buckingham v. United States,* 998 F.2d 735, 742 (9th Cir.1993) (quoting *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 311 (9th Cir.1982)). "However, a litigant must be given reasonable notice that the sufficiency of his or her claim will be in issue...." *Id.* "Reasonable notice implies adequate time to develop the facts on which

the litigant will depend to oppose summary judgment." *Portsmouth Square Inc. v. Shareholders Protective Comm.,* 770 F.2d 866, 869 (9th Cir.1985).

By *sua sponte* entering summary judgment in favor of O'Keefe, the district court may have deprived the State Officials of the opportunity to raise disputed issues of material fact. Although the State Officials had filed a motion for summary judgment before the district court ruled in favor of O'Keefe, that motion only developed the facts necessary to support the State Officials' claim of qualified immunity and their argument that the DOC Mail Policy did not infringe on O'Keefe's First Amendment rights. The State Officials had not presented any facts supporting their claim that legitimate penological interests justify the DOC Mail Policy.

We do not decide whether it was error to enter summary judgment *sua sponte,* because if there were error, it was rectified when the district court reconsidered the matter. The district court allowed the State Officials to file a supplemental memorandum addressing the legitimate penological interests furthered by the DOC Mail Policy. The State Officials therefore had adequate time to develop the facts on which they depended to oppose summary judgment.

### 2. *Summary Judgment*

The State Officials claim that the district court erred when it granted summary judgment in favor of O'Keefe because (a) O'Keefe failed to establish any infringement on his First Amendment right to petition the government for redress of grievances, and (b) the DOC Mail Policy was reasonably related to legitimate penological interests.

■ We review *de novo* a grant of summary judgment. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). We must determine, viewing the evidence in the light most favorable to the nonprevailing party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *Id.*

### a. *Infringement on the Right to Petition*

■ Prisoners have a constitutional right to petition the government for redress of their grievances, which includes a reasonable right of access to the courts. *Hudson v. Palmer*, 468 U.S. 517, 523, 104 S.Ct. 3194, 3198–99, 82 L.Ed.2d 393 (1984) (citing *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969)). This right extends to administrative arms and units of the government. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir.1995).

■ In order to establish that government action has infringed on the constitutional right to petition the government, an individual need not show that the government has directly interfered with the exercise of this right. *Laird v. Tatum*, 408 U.S. 1, 11, 92 S.Ct. 2318, 2324–25, 33 L.Ed.2d 154 (1972). Unconstitutional restrictions may arise from the deterrent, or "chilling," effect of governmental action. *Id.* To have such an effect, the government action must be regulatory, proscriptive, or compulsory in nature, and the complainant must be either presently or prospectively subject to the regulations, proscriptions, or compulsions that he or she is challenging. *Id.* Further, an unconstitutional chill will only exist if the government action has injured the individual or places the individual in immediate danger of sustaining a direct injury. *Id.* at 13, 92 S.Ct. at 2325–26.

Implementation of the DOC Mail Policy constitutes government action that is regulatory in nature. Moreover, O'Keefe is subject to this regulation during his term of imprisonment. The difficult question, however, is whether the DOC Mail Policy places O'Keefe in immediate danger of sustaining a direct injury. *Compare Procunier v. Martinez*, 416 U.S. 396, 427, 94 S.Ct. 1800, 1818, 40 L.Ed.2d 224 (1974) (Marshall, J., concurring) (noting that the "threat of identification and reprisal inherent in allowing correctional authorities to read prisoner mail is not lost on inmates") *with Wolff v. McDonnell*, 418 U.S. 539, 575–76, 94 S.Ct. 2963, 2984–85, 41 L.Ed.2d 935 (1974) (noting that while the First Amendment might protect against the censoring of inmate mail, "freedom from censorship is not equivalent to freedom from inspection or perusal").

We need not decide whether the district court erred when it ruled that the DOC Mail Policy, despite its fairly expansive definition of legal mail, has a chilling effect on O'Keefe's First Amendment right to petition the government for redress of grievances. Even assuming that the DOC Mail Policy does have such a chilling effect, the State Officials have established that legitimate penological interests justify the policy. *Cf. Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995) (per curiam) (deciding that legitimate penological interests justified regulation which permitted prison employees to perform a cursory inspection of outgoing mail, without discussing impact of regulation on prisoners' rights); *Mann v. Adams*, 846 F.2d 589, 590–91 (9th Cir.) (per curiam) (upholding regulation which permitted prison employees to open incoming mail, without discussing impact of regulation on prisoner's rights), *cert. denied*, 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231 (1988).

### b. *The DOC Mail Policy and Legitimate Penological Interests*

■ A prison may adopt regulations which infringe on an inmate's constitutional rights if those regulations are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 2261, 96 L.Ed.2d 64 (1987). There are four factors to consider when determining the reasonableness of a prison regulation: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there exists an obvious, easy alternative to the regulation "that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests." *Id.* at 89–91, 107 S.Ct. at 2262–63 (internal quotations omitted).

"When a prison regulation affects outgoing mail as opposed to incoming mail, there must be a 'closer fit between the regulation and the purpose it serves.'" *Witherow*, 52 F.3d at 265 (quoting *Thornburgh v. Abbott*, 490 U.S. 401, 412, 109 S.Ct. 1874, 1881, 104 L.Ed.2d 459 (1989)). "However, in neither case must the regulation satisfy a least restrictive means test." *Id.* (quotations omitted).

### (1) *Connection to the Legitimate Governmental Interests*

■ The district court properly concluded that the prevention of criminal activity and the maintenance of prison security are legitimate penological interests which justify the regulation of both incoming and outgoing prisoner mail. *See, e.g., id.* (noting that security, order, and rehabilitation are legitimate penological interests which justify the inspection of outgoing prisoner mail); *Mann*, 846 F.2d at 590–91 (same for incoming prisoner mail). The district court mistakenly concluded, however, that there is no rational connection between the DOC Mail Policy and these interests. Regulating correspondence between prisoners and government agencies can serve to prevent criminal activity and maintain prison security.

It would be possible for a prisoner to utilize alleged grievance mail to plan escapes or to commit other crimes. A prisoner could also create a mail ruse by having an outside confederate send mail that threatens prison security under the guise of a grievance response. The DOC Mail Policy allows prison employees to read regular mail, including grievance mail, to prevent prisoners from using mail to achieve these ends. Moreover, the infringement, if any, on O'Keefe's First Amendment rights is no greater than is necessary or essential to the protection of the governmental interests involved. The DOC Mail Policy specifically precludes mailroom staff from disclosing the contents of prisoner mail except in the course of the staff person's official duties. We therefore conclude that the DOC Mail Policy is rationally related to furthering the legitimate penological interests that justify it.

### (2) *Alternative Means for the Prisoner*

"Where other avenues remain available for the exercise of the asserted right, courts should be particularly conscious of the measure of judicial deference owed to corrections officials." *Turner*, 482 U.S. at 90, 107 S.Ct. at 2262 (citation and internal quotation omitted). And "[w]here, as here, a state penal institution is involved, federal courts have a further reason for deference to the appropriate prison authorities." *Casey v. Lewis*, 4 F.3d 1516, 1521–22 n. 3 (9th Cir.1993) (citation and internal quotations omitted).

Although the option of sending some grievances as legal mail has been foreclosed, O'Keefe still can send those grievances as regular mail. Moreover, O'Keefe has not been denied all means of petitioning state agencies and officials without having such communications read by prison officials. The definition of legal mail is sufficiently broad to permit O'Keefe to petition the state attorney general, governor, members of the state legislature and law enforcement officers, among others, for redress of grievances. Therefore, we conclude that other avenues remain available for O'Keefe to exercise the asserted right.

### (3) *Impact on Others*

Treating grievance mail as legal mail would increase the administrative cost of processing prisoner mail. Rather than immediately reading the grievance mail, prison employees would have to "retrieve the prisoner and inspect the mail in his presence, or visit the prisoner and inspect the mail in his cell." The increased administrative cost that would result supports the conclusion that the State Officials are not obligated to treat O'Keefe's grievances as legal mail, when sent to recipients other than those authorized in the DOC Mail Policy. *Abbott*, 490 U.S. at 419, 109 S.Ct. at 1884–85. *See also Casey*, 4 F.3d at 1522 (noting that it was proper to consider additional cost where prisoner's claimed right was not denied in its entirety).

### (4) *Alternative Means for the Prison*

The existence of easy alternatives to a prison policy restricting constitutional rights may be evidence that the policy is not rea-

sonable, but rather is an "exaggerated response to prison concerns." *Turner*, 482 U.S. at 90–91, 107 S.Ct. at 2262 (quotations omitted). When, however, "prison officials are able to demonstrate that they have rejected a less restrictive alternative because of reasonably founded fears that it will lead to greater harm, they succeed in demonstrating that the alternative they in fact selected was not an 'exaggerated response' under *Turner*." *Abbott*, 490 U.S. at 419, 109 S.Ct. at 1884–85 (emphasis added).

O'Keefe suggests that an acceptable alternative is to treat all grievance mail as legal mail. While this proposal may suffice to stem the flow of some contraband, such a broad definition of legal mail fails to address adequately the need to maintain prison security and to prevent escape attempts and other criminal activity. *Cf. Friend v. Kolodziec-zak*, 923 F.2d 126, 128 (9th Cir.1991) (ruling that inmates' proposed alternative was inadequate where it satisfied some, but not all, of the prison officials' security concerns). It is incumbent upon O'Keefe to point to an alternative that accommodates his rights at a *de minimis* cost to security interests. *Casey*, 4 F.3d at 1523. O'Keefe has failed to make this showing. The prison is not required to adopt the least restrictive alternative. *Thornburgh v. Abbott*, 490 U.S. at 410–11, 109 S.Ct. at 1880; *Turner v. Safley*, 482 U.S. at 90, 107 S.Ct. at 2262.

### CONCLUSION

If there was any error in granting summary judgment *sua sponte*, it was rectified when the district court allowed the State Officials to file a supplemental memorandum to develop the facts on which they depended to oppose summary judgment. Nevertheless, because we find that the DOC Mail Policy is a reasonable means to further the state's legitimate penological interests, we reverse the grant of summary judgment in favor of O'Keefe, and remand to the district court with directions to enter summary judgment in favor of the State Officials.

REVERSED and REMANDED.